878 So.2d 392 (2004)
Felix AGUILA, as personal representative of the Estate of Marilyn Aguila, Appellant,
v.
HILTON, INC., a Florida corporation, Charles Hilton, an individual, and Best Western Casa Loma Motel, Appellees.
No. 1D02-5061.
District Court of Appeal of Florida, First District.
June 3, 2004.
Rehearing Denied August 2, 2004.
*394 Clifford C. Higby of Bryant & Higby, Panama City; C. Steven Yerrid and Theresa L. Fiset of The Yerrid Law Firm, Tampa, for Appellant.
John M. Fite of Barron, Redding, Hughes, Fite, Fensom, Sanborn & Kiehn, P.A., Panama City, for Appellees.
PADOVANO, J.
This is an appeal from a final order dismissing a wrongful death case against the owners of a motel. The plaintiff's daughter was killed in a car wreck caused by an intoxicated young man who had been at a party at the motel. The theory of the plaintiff's case is that the defendants are liable for the death because they promoted and sponsored underage drinking. We conclude that the complaint fails to state a cause of action for wrongful death against these defendants, because it does not allege any facts that could support a conclusion that the defendants owed a legal duty of care to the plaintiff's daughter. Therefore, we affirm.
The event that has become the subject of the controversy in this case took place in Panama City Beach on March 13, 2001, at a motel owned and operated by the defendants. At that time, the motel was filled with college students who were in town for spring break. A security guard walked past an open doorway to room 319 of the motel where a large number of young people had gathered and noticed that one of the occupants of the room was injured and lying on the floor. The security guard ordered everyone to leave the room while she called the police and emergency medical personnel. Among those asked to leave the room was Derrick Smith, an unregistered guest. The security guard knew that Smith and some of the others in the room were intoxicated.
*395 Derrick Smith went down to the parking lot, got into his truck, and drove away. A short distance from the motel, Smith drove his truck into the rear end of a car, killing one of its occupants, Marilyn Aguila. Another person in the automobile, Glenn Permuy, Jr., was seriously injured. He filed a suit against the defendants in this case, as well. Derrick Smith was convicted of manslaughter for the death of Marilyn Aguila and sentenced to ten years in prison.
The case against the defendants was based on a general claim that they created the atmosphere for a serious act of negligence. The plaintiff alleged that the defendants promoted their motel as the ideal place to "party" during spring break and that this term is understood to refer to drinking. According to the complaint, the defendants knew that some of the motel guests and their visitors were underage drinkers and that some of them drove automobiles. Additionally, the plaintiff alleged that the defendants were negligent in that they hired only one security guard, who was unable to adequately monitor the premises or patrol the parking lot. All of these facts, the plaintiff argued, created a risk to the motel guests and to the general public.
The defendants moved to dismiss the complaint for failure to state a cause of action. They argued that the death was caused by the actions of Derrick Smith and that the facts alleged in the complaint did not bring the case within any exception to the general rule that a defendant cannot be held liable for the negligence of a third party. The trial court agreed and granted the motion.
In the order dismissing the case, the court reasoned that the duty element of negligence would have to be "stretched totally out of shape" to impose liability on the defendants for harm caused by someone who was not staying at the motel and had not been served alcohol by the motel, to someone else who was also not staying at the motel. To hold the defendants liable under these circumstances, the trial court concluded, "would make a motel an insurer for all visitors during spring break." The complaint was not amended after the entry of the order, and the dismissal became final. The plaintiff then filed the present appeal to seek review of the order.
Whether the allegations of a complaint are sufficient to state a cause of action is a question of law. See Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732, 734 (Fla.2002); Rittman v. Allstate Ins. Co., 727 So.2d 391, 393 (Fla. 1st DCA 1999). It follows that an order dismissing a complaint for failure to state a cause of action must be evaluated on appeal by the de novo standard of review. See Sarkis v. Pafford Oil Co. Inc., 697 So.2d 524, 526 (Fla. 1st DCA 1997). The appellate court must accept the allegations of the complaint as true, but is not required to defer to the trial court's conclusions regarding the legal sufficiency of the allegations.
The issue in this case is whether the allegations of the complaint are sufficient to show that the defendants owed a duty of care to the plaintiff's daughter. To properly address this issue, we must first consider the general test for determining the existence of a legal duty as an element of negligence. In the leading case of McCain v. Florida Power Corp., 593 So.2d 500, 503 (Fla.1992), the Florida Supreme Court held that a legal duty exists if the defendant's conduct creates a foreseeable zone of risk that poses a general threat of harm to others.[1]
*396 In the McCain case, an employee of the power company had improperly marked the location of an underground power line. The plaintiff, an operator of a mechanical trenching machine, was injured when the machine came in contact with the line located in an area not marked as dangerous. On these facts, the court concluded that the power company owed a duty to prevent the kind of injury that was sustained by the machine operator.
One important attribute of a legal duty that is assumed in many cases but not expressed is that the defendant must have had the ability to avoid the risk. This point is made in the McCain opinion by implication. Quoting its earlier opinion in Kaisner v. Kolb, 543 So.2d 732 (Fla.1989), the court said that a defendant who creates a foreseeable zone of risk has a duty "either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." McCain 593 So.2d at 503. In this part of the opinion, the court clearly implied that the defendant must be in a position to control the risk. That was certainly the case in the controversy then before the court. The power company had exclusive control of the underground cable, and no one else knew of its exact location. The company could have minimized the risk of electrocution or avoided it altogether simply by marking the correct location of the cable.
In the present case, the plaintiff alleges that the defendants created a zone of risk to others by promoting underage drinking during spring break. However, this conduct connects the defendants with the death of the plaintiff's daughter only in the most general way. The collision leading to the death took place on a public road off the premises of the motel, and the risk that such a collision might have occurred did not arise from any act or omission of the defendants.
Perhaps it crossed the security guard's mind that Derrick Smith might attempt to leave the motel in a motor vehicle, that he might be driving the vehicle, and that he might injure someone. But that much could be said of anyone who may have taken notice of the fact that Smith and the other young men and women at the party were intoxicated. A passerby in the hallway may have had the same fear, but that would not give rise to a legal duty on his part to take some kind of preventive action.
We acknowledge that the duties of a motel security guard would differ from those of a bystander in some situations, but the example illustrates that a legal duty does not exist merely because the harm in question was foreseeable. To the contrary, it is clear from McCain that the defendant's conduct must "create" the risk.[2] With this in mind, we can safely conclude that a legal duty is not established by evidence of foreseeability alone. *397 See, e.g., Thompson v. Baniqued, 741 So.2d 629 (Fla. 1st DCA 1999) (holding that a neighbor had no duty to supervise a young child playing in her yard, even though she knew the child could injure himself if he ran into the street). There must also be some evidence that the risk was created by the alleged negligence of the defendant. In the present case, a reasonable person might think that the collision was foreseeable, but the allegations do not show that the risk of the collision was created by any act or omission of the defendant.
To illustrate this point, we need only ask ourselves what the security guard might have done differently. If she had not asked all of the intoxicated students to leave the room, they would have been free to stay. Perhaps no one would have left the room at that time. It does not follow, however, that the act of ordering all of the students out of the room created the risk. They were all free to leave of their own accord, and we cannot say how long they may have remained at the party had they not been asked to leave.
We find it significant that the security guard did not eject the students from the motel grounds. Some of them may have decided to remain at the motel in common areas. Others may have decided to walk to other parties in nearby motels. In this respect, the case is very different from Bardy v. Walt Disney World Co., 643 So.2d 46 (Fla. 5th DCA 1994). There, a Disney security guard ejected a drunken Disney employee from the premises and ordered the employee to remove his car, despite his protestations that he was too intoxicated to drive. We certainly agree that, on those facts, the risk of harm to the driver and others was a risk created by the defendant's conduct. In the present case, however, the connection is much more attenuated. The security guard did not create the risk. She did not even know that Derrick Smith would be leaving in his own truck.
Nor could the security guard have taken any lawful action that would have prevented the collision. Unlike the risk in McCain, the risk in this case was not one that was within the control of the defendants. The plaintiff has alleged that the security at the motel was inadequate, but it is difficult to imagine how greater security would have prevented the death of his daughter. She died in a motor vehicle collision on a public street near the motel. The best motel security force available would not have been able to protect her from the risk of a car crash.
The plaintiff contends that the accident could have been prevented if the security guard had detained Derrick Smith, but this argument is also problematic. Derrick Smith was only one of many intoxicated students at the party. The security guard could not have known that he was the one who would later cause an accident. To satisfy the duty the plaintiff would impose in this case, the security guard would have had to detain all of the students in a safe place. This argument asks too much. The plaintiff has not shown that the security guard had the ability to care for all of the students, much less a legal right to immobilize them.
The main difference between this case and many others in which the courts have found a duty is that there is no relationship between the defendant and the plaintiff. For example, we found that a duty existed in Hardy v. Pier 99 Motor Inn, 664 So.2d 1095 (Fla. 1st DCA 1995), but that case involved an injury to a hotel patron on the premises of the hotel. We concluded that the hotel had a duty to exercise reasonable care to protect its patrons under the circumstances of the case. See also Hendry v. Zelaya, 841 So.2d 572 (Fla. *398 3d DCA 2003) (holding that a tavern was liable to a patron injured by another patron on the premises during a rowdy Memorial Day celebration). But these cases do not support the proposition that a motel has a duty to protect members of the general public from acts committed off the motel premises by motel patrons or their guests.
We acknowledge that, in certain well-defined circumstances, the owner of a business may have a duty to members of the general public for acts committed off the premises of the business. For example, a bar or tavern has a legal duty to refrain from serving alcoholic beverages to minors, and a breach of that duty may subject the bar or tavern to liability for injuries caused by an intoxicated minor. See Migliore v. Crown Liquors of Broward, Inc., 448 So.2d 978 (Fla.1984). In this case, however, the motel owned and operated by the defendants did not serve alcoholic beverages. Derrick Smith was served elsewhere, and that presents an entirely different issue.
Florida law does not impose a general duty on the owner of a business to ensure the safety of an intoxicated person who is about to leave the premises of the business. See Preferred Nat'l Ins. v. Fat Investors, Inc., 842 So.2d 1068 (Fla. 4th DCA 2003). By this principle, a motel that does not serve alcoholic beverages has no duty to ensure that an intoxicated person leaving the premises does not injure a member of the general public.
Based on all of the facts alleged in this case, we think that the trial court was correct in concluding that the defendants did not create a foreseeable zone of risk. This leaves us to determine whether there is any circumstance presented here that would expose the defendants to vicarious liability for the actions of Derrick Smith.
As a general principle, a party has no legal duty to control the conduct of a third person to prevent that person from causing harm to another. See Trianon Park Condo. Ass'n, Inc. v. City of Hialeah, 468 So.2d 912, 918 (Fla.1985); Gross v. Family Servs. Agency, Inc., 716 So.2d 337, 338 (Fla. 4th DCA 1998). This principle is well accepted in the law. As the court noted in Boynton v. Burglass, 590 So.2d 446, 448 (Fla. 3d DCA 1991), "Florida courts have long been loathe to impose liability based on a defendant's failure to control the conduct of a third party."
There are exceptions to this rule, but they do not apply here. A duty to protect an unknown plaintiff from the conduct of a third party may arise if the defendant is in actual or constructive control of: (1) the instrumentality of the harm; (2) the premises upon which the tort is committed; or (3) the person who committed the tort. See Vic Potamkin Chevrolet, Inc. v. Horne, 505 So.2d 560, 562 (Fla. 3d DCA 1987); Daly v. Denny's, Inc., 694 So.2d 775, 777 (Fla. 4th DCA 1997). We can easily eliminate these exceptions. The injury did not occur on the premises, and the defendants did not control the instrumentality (the truck) that caused the injury. They did not own the truck, nor did they have the right to prevent the owner from using it. Likewise, the defendants did not have control over the tortfeasor, Derrick Smith. They had a right to ask him to leave the party in room 319, but no right to tell him what he could do once he had departed.
The defendants could not be held responsible for the actions of Derrick Smith on the theory they had the power to control him, because the complaint fails to allege the existence of a special relationship giving them a right of control. Florida has adopted the "special relationship" *399 test set forth in the Restatement (Second) of Torts (1965). Section 315 of the Restatement provides:
There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
(b) a special relation exists between the actor and the other which gives to the other a right to protection.
See Michael & Philip, Inc. v. Sierra, 776 So.2d 294, 298 (Fla. 4th DCA 2000).
The defining feature of the cases finding a special relationship under section 315(a) is that they all involve situations in which the defendant has a duty to care for the third party who caused the harm. The duty can be one that is established by law, as would be the case between a parent and child, but it may also arise from other kinds of relationships. For example, in Rupp v. Bryant, 417 So.2d 658 (Fla.1982), the court held that a school could be liable for a tort committed by a student on the school grounds. And in Garrison Retirement Home Corp. v. Hancock, 484 So.2d 1257 (Fla. 4th DCA 1985), the court held that a retirement home could be liable for a tort committed by a mentally impaired resident on the premises. Cf. Palmer v. Shearson Lehman Hutton, Inc., 622 So.2d 1085 (Fla. 1st DCA 1993) (holding that a securities dealer had no common law duty to prevent the fraud by a securities broker who was no longer within its employ and control when the misconduct occurred). It is clear from these decisions that a duty can be based on a special relationship only if the defendant has the right to exercise some control over the person who has committed the tort.
Here, the relationship between Derrick Smith and the motel was remote at best and it does not qualify as a special relationship that would allow the imputation of a duty under section 315(a) of the Restatement. Smith was not a registered guest nor otherwise a patron of the motel. Although he had been drinking, he was not served alcohol by anyone employed at the motel. Nor is there any allegation that the security guard voluntarily undertook the task of caring for Derrick Smith. She merely asked him, along with everyone else in the room, to leave the party.
In the absence of a special relationship, the fact that a defendant realizes or should realize that an action on his or her part is required to ensure the safety of another person does not alone create a duty to take that action. See Restatement (Second) of Torts § 314 (1965). The defendant must also have a right to take the action in question. As the court said in Garrison, implicit in the special relationship exception is the proposition that the special relationship "must include the right or the ability to control another's conduct." 484 So.2d at 1261. So, it does not make the plaintiff's case to argue that the motel security guard may have realized that Derrick Smith could harm someone. She was simply not in a position to do anything to lessen that risk. Short of committing false imprisonment, she had no authority to order that he be detained on the motel grounds.
The exception in section 315(b) of the Restatement is plainly inapplicable. It might be appropriate to find a legal duty under this subsection if the injured party was a business invitee and if the injury occurred on or near the defendant's premises. See, e.g., Hall v. Billy Jack's, Inc., 458 So.2d 760 (Fla.1984); Stevens v. Jefferson, 436 So.2d 33 (Fla.1983); Holiday Inns, Inc. v. Shelburne, 576 So.2d 322 (Fla. *400 4th DCA 1991). In that event, the duty would flow from the nature of the relationship. This principle cannot be applied here, however, because there was no relationship of any kind between the defendants and the plaintiff's daughter. To hold that the defendants had a duty to her would, as the trial court observed, be the equivalent of concluding that they are strictly liable for all injuries caused by those who come to Panama City Beach for spring break.
For these reasons, we conclude that the complaint fails to state a cause of action for wrongful death against the defendants in this case. The plaintiff made a number of other arguments on appeal and we recognize that we have not addressed all of them in this opinion. However, we have considered all of the arguments presented in the briefs and we find no reversible error.
Affirmed.
VAN NORTWICK and HAWKES, JJ., concur.
NOTES
[1] Although a legal duty may arise in other ways, the kind of legal duties the court was referring to in McCain are those that arise "from the general facts of the case." A legal duty may arise from (1) legislative enactments, (2) judicial interpretations of legislation, (3) other judicial precedents, and (4) the general facts of the case. See McCain, 593 So.2d at 503 n. 2 (citing Restatement (Second) of Torts § 285 (1965)). In McCain, the Court noted that it was dealing with the last category  a duty arising from the foreseeable zone of risk created by the defendant. Id. See also Clay Elec. Coop., Inc. v. Johnson, 28 Fla. L. Weekly S866 (Fla. Dec. 18, 2003) (applying the test of duty based on the general facts of the case).
[2] The court used a form of the word "create" several times to make the point that the foreseeable risk must be one that comes into being as a result of the defendant's act or omission. McCain, 593 So.2d at 502-503.