DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STEPHANIE DE LA TORRE, HUMBERTO MIRANDA,** and **CARLA GALLARDO,**
Appellants,

v.

**FLANIGAN'S ENTERPRISES, INC.,** d/b/a **FLANIGAN'S BAR AND GRILL,**
Appellee.

No. 4D15-195

[March 9, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John B. Bowman, Judge; L.T. Case No. 12-018104 02.

Neil Rose, Hollywood, for appellants.

Kathryn Ender and Lissette Gonzalez of Cole Scott & Kissane, P.A., Miami, for appellee.

FORST, J.

Appellants Stephanie de la Torre, Humberto Miranda, and Carla Gallardo were injured when their vehicle was hit by a drunk driver ("Driver"). Appellants filed a complaint against Appellee Flanigan's Enterprises, which owns and operates the restaurant at which Driver had been drinking. The trial court dismissed the suit, finding that section 768.125, Florida Statutes (2011), insulated businesses from liability for damages caused by intoxicated patrons and therefore precluded the action. Appellants now appeal this dismissal, arguing Appellee's actions on the night of the accident constituted the assumption of a voluntary duty, which removed the case from the protections of section 768.125. We disagree and affirm the dismissal of the action.

**Background**

Driver went to the restaurant operated by Appellee on the night of December 2, 2011. While there, Driver became intoxicated. Appellee and its employees stopped serving alcohol to Driver at some point in the night

and allegedly served Driver water in an effort to "sober her up." Subsequently, Driver left the restaurant in her vehicle. At some point later that night, she crossed into oncoming traffic and struck a vehicle containing Appellants, who were injured in the accident.

Appellee had an internal policy designed to prevent drunken patrons from driving away from the premises. Appellants' amended complaint maintained that this policy called for Appellee's employees and/or law enforcement officers to ensure that intoxicated patrons did not drive by taking car keys away from the patrons and ensuring that they left in a taxi or with a sober driver.

Appellants filed a suit against Appellee, alleging that it undertook a voluntary duty to prevent the Driver from driving while intoxicated, but was negligent in performing this duty. Appellee moved to dismiss the action, arguing that the suit was precluded by section 768.125, Florida Statutes. The trial court agreed and dismissed the action. Appellants now appeal that dismissal.

## Analysis

Because this appeal concerns the propriety of a dismissal for failure to state a cause of action, we take the allegations in the amended complaint as true and consider them in the light most favorable to the Appellants; all reasonable inferences must be drawn in the Appellants favor. *Estate of Massad ex rel. Wilson v. Granzow*, 886 So. 2d 1050, 1051 (Fla. 4th DCA 2004).

The common law rule, codified by section 768.125, absolves sellers from blame for the drunken acts of another. *Ellis v. N.G.N. of Tampa, Inc.*, 586 So. 2d 1042, 1044-47 (Fla. 1991). Specifically, section 768.125 states:

> *A person who sells or furnishes alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury or damage caused by or resulting from the intoxication of such person,* except that a person who willfully and unlawfully sells or furnishes alcoholic beverages to a person who is not of lawful drinking age or who knowingly serves a person habitually addicted to the use of any or all alcoholic beverages may become liable for injury or damage caused by or resulting from the intoxication of such minor or person.

(emphasis added). The parties agree that neither of the exceptions is pertinent to the case at hand. In fact, Appellants argue that this statute

2

is not relevant at all, as they contend liability is not premised on the sale of the alcohol to Driver, but rather arises from the so-called "undertaker's doctrine" and Appellee's attempts at preventing Driver from driving under the influence.

The Florida Supreme Court has used the Restatement (Second) of Torts, sections 323-324A, to define the "undertaker's doctrine." *Wallace v. Dean*, 3 So. 3d 1035, 1040 (Fla. 2009). Section 324A of the Restatement (2nd) pertains to liability to third parties arising from the undertaker's doctrine and states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> > (a) his failure to exercise reasonable care increases the risk of such harm, or
> > (b) he has undertaken to perform a duty owed by the other to the third person, or
> > (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (2d) of Torts, § 324A. Florida courts have used similar language. *See Union Park Mem'l Chapel v. Hutt*, 670 So. 2d 64, 66 (Fla. 1996) ("Voluntarily undertaking to do an act that if not accomplished with due care might increase the risk of harm to others or might result in harm to others due to their reliance upon the undertaking confers a duty of reasonable care, because it thereby 'creates a foreseeable zone of risk.'" (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500 (Fla. 1992)).

Appellee's actions in this case are insufficient for the undertaker's doctrine to apply. Appellee's actions in "cutting off" Driver and giving her water did not increase the risk of harm stemming from Driver's intoxication, nor did the Appellee undertake to perform a duty owed by the Driver to third parties. Further, it is unreasonable to assume, as Appellants do, that Driver would not have driven but for Appellee's actions.

The cases cited by Appellants as applying the undertaker's doctrine are distinguishable from the case at hand. Appellants primarily rely on *Massad*, 886 So. 2d at 1050. In that case, a man became intoxicated at the home of another. *Id.* at 1051. The guest fell and hit his head. *Id.* The

3

host took it upon himself to care for the guest and gave him a prescription medication not prescribed for the guest that worsened the guest's condition. *Id.* The host then left the guest next to a pool. *Id.* The guest fell into the pool and drowned. *Id.* The guest's estate brought an action against the host, who claimed liability was precluded by section 768.125. *Id.* at 1052. The trial court dismissed the case, but we reversed, holding that while that section and the common law protect social hosts from liability for the serving of alcohol to their guests, the host in this case faced potential liability "based upon conduct that occurred at a point in time when [the host] 'took charge' of [the guest], when he was helpless and unable to adequately aid or protect himself." *Id.* at 1053.

*Massad* references *Carroll Air Systems, Inc. v. Greenbaum*, 629 So. 2d 914 (Fla. 4th DCA 1993). In that case, a business bought drinks for one of its employees while he was entertaining clients. *Id.* at 915. The employee later drove while intoxicated and hit a third party. *Id.* The injured party brought an action against the employer. This Court held that the employer was not protected by section 768.125, as "the 'fault' of the employer was not in the furnishing of the drinks but in its knowledge, actual or constructive, that [the employee] was intoxicated and was not in a condition to drive. [The employer] Carroll Air was not merely a social host at the meeting in which [the employee] imbibed excessively. Unlike the social host, an employer has a far greater ability to control the actions of its employees." *Id.* at 917.

Both *Massad* and *Carroll Air Systems* are distinguishable from the current case. In both of those cases, the liable party had more control over the intoxicated party than Appellee had over Driver. In the instant case, Appellee did not "take charge" of Driver in any sense—encouraging her to drink water is substantially different than giving an intoxicated guest prescription medicine, as was the case in *Massad*. Nor is there any evidence that an employee of Appellee assisted Driver to her car or that any of its employees was aware that Driver had started her car while under the influence. In *Carroll Air*, the employer actively encouraged the driver's drinking and paid for his drinks. Further, the *Carroll Air* opinion notes the control employers have over their employees, which was the source of the duty that was breached in that case. There was no such control here and, unlike the employer, Appellee in this case took steps to limit Driver's drinking.

Appellants also cite to *Bardy v. Walt Disney World Co.*, 643 So. 2d 46 (Fla. 5th DCA 1994). There, a Disney employee got drunk at a party hosted by Disney on the Disney World premises. *Id.* at 47. The employee went to sleep in his car. *Id.* A Disney security guard forced him to drive away,

4

despite the employee's protestations that he was too drunk to drive, and threatened to have the employee arrested if he did not leave. *Id.* The employee proceeded to attempt to drive away and promptly ran into a light pole. *Id.* The employee brought an action against Disney. *Id.* The Fifth DCA held that Disney may be liable for damages to the employee, while a dissent from Judge Diamantis argued the suit was precluded by section 768.125. *Id.* at 48-50. *Bardy* is also easily distinguished from this case. In that case, like in *Carroll Air*, there was an employer-employee relationship. Moreover, Disney required the employee to drive and threatened him with legal consequences for failure to do so. In contrast, there is no allegation Appellee requested or demanded the Driver to leave the premises, much less drive herself.

In addition to the Appellants' failure to show that the undertaker's doctrine should apply to this case, the legislative intent behind section 768.125 was to limit liability for the actions of others and an expansion of liability would be contrary to these goals. As we noted in *Massad*:

> The supreme court has viewed section 768.125 as "a limitation on the liability of *vendors* of intoxicating beverages," *Migliore* [*v. Crown Liquors of Broward, Inc.*], 448 So. 2d [978,] 980 [(Fla. 1984)] (emphasis added), which "codified the original common law rule absolving *vendors* from liability for sales but provided exceptions for sales to those who were not of a lawful drinking age or to a person habitually addicted to alcoholic beverage use." *Ellis v. N.G.N. of Tampa, Inc.,* 586 So. 2d 1042, 1046 (Fla. 1991) (emphasis added).

*Massad*, 886 So. 2d at 1052. Consistent with this policy goal, our sister courts have repeatedly held that establishments should not be liable for the drunk driving of third parties. For instance, in *Weber ex rel. Estate of Weber v. Marino Parking Systems., Inc.*, 100 So. 3d 729 (Fla. 2d DCA 2012), a valet service returned car keys to an intoxicated driver. The valet was insulated from liability, with the court's opinion noting that failure of the valet service to return the keys could result in liability for conversion. *Id.* at 731. In *Aguila v. Hilton, Inc.,* 878 So. 2d 392 (Fla. 1st DCA 2004), a hotel required several intoxicated persons to leave the hotel when a spring break party got out of hand. *Id.* at 394. One of the intoxicated individuals later drove off and hit several third parties. *Id.* at 395. The First DCA held that the hotel was not liable for the drunk driver's actions, noting "a legal duty does not exist merely because the harm in question was foreseeable. To the contrary, it is clear . . . that the defendant's conduct must 'create' the risk." *Id.* at 396. Further, the court stated "Florida law does not impose a general duty on the owner of a business to ensure the safety of

5

an intoxicated person who is about to leave the premises of the business." *Id.* at 398 (citing *Preferred Nat'l Ins. v. Fat Investors, Inc.*, 842 So. 2d 1068 (Fla. 4th DCA 2003)); *see also Boyton v. Burglass*, 590 So. 2d 446, 448 (Fla. 3d DCA 1991) ("Florida courts have long been loathe to impose liability based on a defendant's failure to control the conduct of a third party.").

Perhaps most similar to the case at hand is *Hall v. West*, 157 So. 3d 329 (Fla. 2d DCA 2015). In that case, a driver became intoxicated at a bar. *Id.* at 330. He then drove away and ultimately hit a third party. *Id.* The injured party sued the bar, arguing "his claims are unrelated to the sale of alcohol; independent of any sale of alcoholic beverages, he insists that [the bar] was negligent in allowing [the driver] to drive away while intoxicated." *Id.* at 331. The injured party, like Appellants, also alleged liability for, inter alia, failure to "ensure that an intoxicated patron left the premises with a safe ride home in accordance with its own policies and procedure . . . ." *Id.* at 330-31.

The Second District held that the suit was precluded by section 768.125. *Hall*, 157 So. 3d at 331. The court distinguished that case from *Bardy*, noting that the driver was not forced to drive by the bar's managers or employees. *Id.* at 332. The court concluded by noting:

> Finally, despite what [the defendant's] operating policies may have been, Florida law imposes no general duty on a business owner to ensure the safety of an intoxicated person who is about to leave the premises. And, that business has no legal duty to control the conduct of a third person to prevent that person from harming others. *Aguila*, 878 So. 2d at 398 (citations omitted). Unfortunately, even if [the intoxicated patron] should not have driven, [the defendant] could not restrain him, take away his keys, or impound his car. *See Weber*, 100 So. 3d at 731.

*Hall*, 157 So. 3d at 331. While *Hall* did not specifically address the undertaker's doctrine, the allegations in that case appear to be almost identical to those raised in this case.

Appellants insist that this case is different than all these other cases because Appellee had internal policies preventing drunk patrons from leaving. However, there is ample case law stating that internal policies do not create a duty to third parties. *See Pollock v. Fla. Dep't. of Hwy. Patrol*, 882 So. 2d 928, 937 (Fla. 2004) ("While a written policy or manual may be instructive in determining whether the alleged tortfeasor acted negligently

6

in fulfilling an independently established duty of care, it does not itself establish such a legal duty vis-a-vis individual members of the public."); *Gunlock v. Gill Hotels Co.*, 622 So. 2d 163, 164 (Fla. 4th DA 1993) ("[W]e can find no authority that evidence of an internal policy creates a substantive duty to conform to the standard of conduct contained therein.").

## Conclusion

Accepting Appellants' argument would encourage restaurants and bars to avoid liability by intentionally not having a policy or practice to deter drunk driving and to continue serving alcohol to intoxicated patrons. Moreover, this seeming "no good deed goes unpunished" theory would presumably extend to other parties, such as friends or family members, that voluntarily encouraged intoxicated individuals to stop drinking or attempted to "sober them up."  Again, allowing for an expansion of liability to these parties would be contrary to public policy and the intent of the legislature.

Because the Appellee's actions did not *increase* the risk to the public, assume a duty owed to a third party, or create justifiable reliance by the Driver, the undertaker's doctrine does not apply to this case.  Therefore, we affirm the trial court's dismissal of Appellants' cause of action.

*Affirmed.*

MAY, J., and SCHER, ROSEMARIE, Associate Judge, concur.

*          *          *

***Not final until disposition of timely filed motion for rehearing.***